GEORGE P. REED *vs.* A. H. VANCLEVE and others.

1. The declarations of the holder of a promissory note, made while such, are competent evidence in an action brought by a subsequent holder to prove that the note has been paid, or that he took it up, and paid it for the benefit of prior parties, and made no claim upon it.

2. If the real owner of the note permits another to deal with, and claim it as his own, and conceal the fact of his agency, the declarations of such agent may be offered in evidence by one to whom they were made, who has acted upon them.   The principal in such case is estopped from denying the power of the agent to make the admissions.

3. Where evidence was excluded as principal testimony, but admitted to contradict a witness, and it was competent upon the merits of the case, *held* that the verdict should be set aside if in favor of the party objecting to the testimony.

---

This cause was commenced in this court, and was tried at the Hudson Circuit, at May Term, 1858.   At the trial several exceptions were taken to the ruling of the court on the admissibility of evidence, and on the return of the *postea*, the defendants moved to set aside the verdict, and for a new trial.

The facts in the case and the points raised on the argument sufficiently appear in the opinion of the court.

Argued at November Term, 1858, before the CHIEF JUSTICE, and Justices VREDENBURGH and WHELPLEY.

*W. L. Dayton*, for defendants.

*Zabriskie*, for plaintiff.

The opinion of the court was delivered by

WHELPLEY, J. The plaintiff, at the Hudson Circuit, had a verdict upon a promissory note made by the defendants, A. H. Vancleve & Co., dated May 18th, 1855, payable at the Suffolk Bank, Boston, to the order of R. P. Davis, at six months. It was endorsed by R. P. Davis, George P. Reed, and L. Coffin.

The defendants now moved to set this verdict aside, and grant a new trial.

*First.* Because evidence offered by the defendants was overruled.

*Second.* Because the verdict is not supported by the evidence.

The proof was clear that the note was accommodation paper, made by defendants for the accommodation of the payee, and was to be paid by him. It was discounted by L. Coffin, with his own funds or those of Reed. When it became due, Coffin, at the special request of Davis, paid the note to the Faneuil Hall Bank, the holders, who had discounted it for Coffin. It was afterwards sent by Coffin to the plaintiffs' attorney for collection, who held it for that purpose on the 8th day of May, 1856, and stated such to be the case to the attorney of the defendants, when inquired of as to the fact of ownership.

It was insisted at the trial, by the defendants, that Coffin paid off and discharged the note at maturity, for the benefit and at the request of Davis, to discharge the defendants, according to Davis' agreement with them.

To make out this defence, the defendants relied upon the evidence of Frederick Kingman, Esq., who testified that, on the 20th of May, 1856, he visited Boston, as the attorney of the defendants, for the purpose of making inquiry about this note; that he called upon the plaintiff, who stated to him that he knew nothing about the note; that he then called upon Coffin, who stated to witness that he got the note in suit in this way: that Davis called upon him on the day the note matured, and stated that the note (which he, Davis, was bound to pay at maturity)

was due that day, and requested him to go to the bank, and take it up for him; that he, Davis, on account of an engagement at Waltham, could not go to the bank, and requested him to go and pay off the note for him; that in pursuance of such request, he did go to the bank, pay the note, take it up, and had held it ever since—had put the note, among other papers belonging to the transaction, with Davis; that Davis had repeatedly promised to give him another note, but had not done so.

This evidence was objected to, as principal evidence of the facts stated by Coffin, upon the ground that Coffin at that time was a mere agent, not then engaged in the business of his principal, and could not bind his principal by his statements of what had been done previous to that time.

The plaintiff had, previous to this stage of the case, put Coffin upon the stand, who had testified, in substance, that he was a note broker, and, as such, was in the habit of buying notes for the plaintiff, and had bought the note in question with the funds of the plaintiff; and he having first endorsed it, it had been discounted in the bank; that he took it up at the request of Davis, but with Reed's funds, and that Reed was the owner of it. The witness stated that the note was held by him for Reed as collateral for the note or notes on which he had made the loan to Davis.

That the declarations of the holder of a dishonored note, made while such are competent evidence in an action brought by a subsequent holder, to prove that the note has been paid to him, or that he took it up and paid it for the benefit of any prior parties to it, and has no claim upon it, cannot admit of a doubt. *Bayley on Bills* 502, 503; *Pocock* v. *Billings*, *Ry. & M.* 127; *Story on Bills* 220; *Chitty on Bills* 650; 1 *Greenl. Ev.* 190, 191.

The admissibility of the declarations of Coffin depended upon the question whether, at the time he made them, he was the holder of the note in his own right, or permitted

by the holder to act in that capacity.  At that time he had the note, claiming to be the owner, and held himself out to Kingman as such ; he had sent the note to be collected as his property.

Had Kingman been first sworn, doubtless the fact of Coffin's possession of the note as his own, and his sending it to be collected in his own name, would have been abundant *prima facie* evidence of ownership of the note to have rendered his declarations competent evidence of the facts admitted by him.  The difficulty seems to have arisen because Coffin himself had been previously sworn, and had testified that Reed, not he, was the holder of the note at the time in question.

The court relied upon the testimony of Coffin to show that his previous declarations were inadmissible as principal evidence, but admitted them to contradict his evidence upon the merits of the case.  In this I think there was error.  There was evidence to go to the jury that Coffin was the holder of the note at the time of the interview with Kingman.  His own denial of it ought not to have deprived the defendant of the evidence.  Kingman's evidence laid a sufficient ground for its introduction.

If the evidence of Coffin raised a doubt upon this subject, the jury might have been instructed that the evidence of Kingman and the note of Mr. Zabriskie were sufficient *prima facie* evidence of Coffin's ownership of the note to admit his declarations as primary evidence of the facts declared ; but that if they were satisfied he was not, and had not been permitted by the owner to act as such, they ought not to consider the declarations in any other light than as evidence to impeach him.  1 *Greenl. Ev.* 49, and cases there cited.

But even if the evidence did clearly show that Reed, not Coffin, was the owner of the note when the declarations were made, they ought to have been received, if the evidence showed, or fairly tended to show, that at that time, Reed permitted Coffin to hold himself out to those interested in the transaction as the owner.

The evidence of Kingman tended to prove that, if Coffin held the note as agent for Reed, he held it as a paid note; he had the absolute control of it; his principal was ignorant of any such note; he did not claim it, nor even know that his money had been used to take it up, if it ever was so used.

This is not the case of an agent acting for another making an admission in regard to an act done after the doing of it. In such cases the rule of law excludes the admission of the agent as evidence of the facts stated.

The admission must have been made *dum fervet opus*, to be evidence against the principal.

On the other hand, it is a case in which the agent was permitted to hold himself out to the world as the principal in the transaction—to deal, as such, with parties interested in it, to conceal the fact of his principal's interest even from him.

Reed denied his interest in the note to Kingman, when inquiring of him in behalf of his clients. He permitted Coffin to hold himself out to Kingman as the lawful holder of the note; he put it in his power to make statements in regard to the note, which if made by an avowed agent, would not have been relied upon by the defendants or their counsel, but which they had a right to rely upon, if made by a principal.

In such a case, the concealed principal should not be permitted to bring an action in his own name, change the whole face of the transaction by that course, and on the trial exclude the evidence, by showing that although, to the world, the agent was the principal, yet to him he was but an agent. To permit such a course would open a wide door to fraudulent practices, and surprise parties by depriving them of evidence on which they had a right to rely.

Having permitted the agent to assume the character of principal in making the declarations, the principal ought to be estopped from denying his right to make them.

The distinction taken by the judge in admitting the declarations to contradict, but overruling them as evidence directly tending to show payment of the note by Davis, who was primarily liable to pay it through the intervention of Coffin, was of vital importance. By means of it, all the evidence of the defendants to show payment of the note was excluded from the consideration of the jury, and they stood without defence, unless a defence could be gathered from this evidence of the plaintiffs' witnesses. The view I have taken of this question disposes of the case upon this motion.

The verdict must be set aside, and a new trial granted.

CITED *in Ruckman v. Bergholz,* 8 *Vr.* 442.